IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

JENNIFER VERONICA )
MCDONALD, )
        Plaintiff, )
)
v. ) Case No. CIV-14-220-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## OPINION AND ORDER

The claimant Jennifer Veronica McDonald requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born May 29, 1970, and was forty-three years old at the time of the administrative hearing (Tr. 44, 233). She has a high school education and has worked as a bartender, waitress, truck driver, and gas leak detector (Tr. 75, 261). The claimant alleges that she has been unable to work since August 9, 2012, because of depression, bipolar disorder, arthritis, and back problems (Tr. 260).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 24, 2012 (Tr. 233-44). Her applications were denied. ALJ Doug Gabbard, II held an administrative hearing and found that the claimant was not disabled in a written opinion dated February 27, 2014 (Tr. 10-27). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and frequently, stand/walk two hours in an eight-hour workday, sit six hours in an eight-hour workday, but required a sit/stand option to change positions every fifteen to twenty minutes without leaving the workstation (Tr. 18). The

ALJ also found claimant could perform semi-skilled work (work that requires some detailed skills but does not require doing more complex work duties) where interpersonal contact with supervisor and co-workers is on a superficial basis and where there is no contact with the public (Tr. 18). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, touch-up screener, suture winder, and table worker (Tr. 25).

## Review

The claimant's sole contention on appeal is that the ALJ erred at step five of the sequential evaluation by not ensuring that the vocational expert (VE) provided reliable testimony. The Court disagrees with this contention, and the Commissioner's decision must therefore be affirmed.

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs the claimant could perform with her limitations. He posed a number of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age, education, and work history of the claimant who could perform sedentary semi-skilled work, which he defined as work which required some detailed skills but did not require doing more complex work duties, where interpersonal contact with supervisors and co-workers was on a superficial work basis and there was no contact with the general public (Tr. 76). The VE identified two sedentary, semi-skilled jobs such a person could perform: (i) document preparer, DICOT § 249.587-018; and (ii) touch-up

screener, DICOT § 726.684-110 (Tr. 76). The ALJ then posited a person with the additional limitations of working in an environment with ten or fewer people and having the option to alternately sit and stand every fifteen to twenty minutes without leaving the workstation, to which the VE responded: "I'm not sure that I can address that because although I have researched employers . . . I haven't identified them based on the number of employees . . ." (Tr. 77). The ALJ then modified his hypothetical to remove the additional requirement that there be ten or fewer people in the work environment (Tr. 77-78). Based on the modified hypothetical, the VE identified three sedentary, semi-skilled jobs that would allow a sit/stand option every fifteen to twenty minutes and provided the number of jobs both nationally and regionally: (i) touch-up screener, DICOT § 726.684-110, with 50,0000 jobs in the national economy and 560 in the Oklahoma economy; (ii) suture winder, DICOT § 712.687-034, with 72,500 jobs nationally and 480 in Oklahoma; and (iii) table worker, DICOT § 739.687-182, with 83,500 jobs nationally and 740 in Oklahoma (Tr. 78). The ALJ asked the VE where her "job numbers" came from, and she replied that she used a variety of sources, stating, "I start with the OAS data, then I do online research through manta.com regarding different employers. I do employer searches, review data available through the State, county business patterns, things like that" (Tr. 79). The ALJ then asked if her method was the accepted method that experts in her field used, and she replied affirmatively (Tr. 79). Upon questioning by the claimant's attorney, the VE further reiterated and clarified that she arrived at the number of jobs available to the claimant by "us[ing] the OAS. I do employer research, I do job analysis. I . . . use manta.com to do employer searches and adjust my numbers based upon all of

those factors." (Tr. 84). The VE acknowledged that Occupational Employment Statistics (OES) classifies jobs by census codes (SOC) rather than DOT codes, and that she differentiated SOC codes down to the more specific DOT codes based on her own opinion (Tr. 84-85). In his written opinion, the ALJ took administrative notice as to the reliability of the governmental and other source publications used by the VE to identify work that exists in the national economy and gave great weight to the VE's testimony regarding the number of jobs available (Tr. 26).

As an initial matter, the undersigned notes that the claimant did not object to the VE's qualifications as a vocational expert; rather, he objected to her qualifications as a numbers expert (Tr. 74-75, 85). Furthermore, the claimant did not offer any evidence that contradicted the VE's conclusions regarding the numbers of jobs available, despite having cross examined the VE. However, prior to the hearing, the claimant requested that a subpoena be issued to the VE requiring her to produce at the hearing the documentation she relied on when forming her opinions related to the number of jobs available in various job markets, or alternatively, that the VE provide the data sources the she would rely on prior to the hearing (Tr. 361-63). The ALJ overruled this request in his written opinion (Tr. 26).

The claimant contends that the ALJ erred by failing to ensure the VE provided reliable testimony. More specifically, he states the VE did not provide an adequate explanation for the basis of her testimony regarding the number of jobs available in the national and Oklahoma economies. This argument lacks merit.

Once the claimant shows she cannot return to her past relevant work, the "'burden of going forward shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), *quoting Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* at 1329 n.8, *quoting* 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B) and 20 C.F.R. § 416.966(a). If "the grids," *i.e.*, the Medical-Vocational Guidelines, cannot be applied at step five, the Commissioner's burden cannot be satisfied "without producing expert vocational testimony or other similar evidence to establish the existence of significant work within the claimant's capabilities." *Ragland v. Shalala*, 992 F.2d 1056, 1058 (10th Cir. 1993). Criteria the ALJ should consider when deciding if work exists in significant numbers includes the level of the claimant's disability, the reliability of the VE's testimony, the claimant's capability to travel, the isolated nature of the job, and type and availability of jobs. *Trimiar*, 966 F.2d at 1330, *citing Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), *quoting Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). However, the decision is "ultimately left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

As to the reliability of the VE's testimony, the ALJ admitted the VE's comprehensive resume into the record and posed questions regarding her credentials, her understanding of the various vocational skill and exertion levels, her qualifications, and

her experience testifying before the Social Security Administration (Tr. 73-74, 199). The Tenth Circuit has found this level of inquiry sufficient to render a VE's testimony reliable. *See, e. g.*, *Trimiar,* 966 F.2d at 1330-31; *Cowan v. Department of Health and Human Services*, 986 F.2d 1426, *2 (10th Cir. 1993) [unpublished table opinion].

Furthermore, the claimant has not directed the court to any authority suggesting that the Tenth Circuit has an increased evidentiary standard pertaining to the reliability of VE testimony. In the absence of binding authority showing that a different legal standard applies here, this court must review the ALJ's conclusions to determine if they are supported by the familiar substantial evidence standard.

The VE testified that she relied on OAS/Department of Labor data, manta.com (which describes itself as one of the largest online resources dedicated to small business), data available through the State, county business patterns, and other similar sources in addition to her own opinions in determining the number of jobs available to the claimant in the national and Oklahoma economies. The claimant asserts that in order for the VE's opinion to rise to the level of substantial evidence that the ALJ can rely on, the VE was required to explain with exact precision her methodology for arriving at the number of available jobs. However, "[p]rofessional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof." *Rogers v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009) [unpublished opinion], *citing Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *see also*, Social Security Ruling (SSR)

00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (noting that a VE's experience in job placement or career counseling is a reasonable explanation for a conflict between the VE's testimony and the DOT). To conclude otherwise would obviate the need for VE testimony in the first place.

In response to the ALJ's inquiry, the VE testified that she referenced a variety of sources, including governmental sources, as well as used her own opinion in determining the number of jobs available and that the methodology she employed in making her conclusions was the acceptable method used by experts in her field (Tr. 79). Therefore, the VE's testimony is relevant evidence that a reasonable person would accept as adequate to support the conclusion that there is work available in significant numbers in the national economy that the claimant can perform, and the ALJ did not err in relying on it.

## Conclusion

In summary, the Court finds that correct legal standards were applied, and that the decision of the Commissioner is supported by substantial evidence. The Commissioner's decision is therefore hereby AFFIRMED.

**DATED** this 30th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**